**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-CR-60273-PCH**

**UNITED STATES OF AMERICA**

**vs.**

**LINDSLEY CHAMBERS JR,**
**ROBERT MCKINLEY THOMAS,**
**JUSTIN ANTHONY SEIVRIGHT,**
**TACAVEON TRAVON CARSON,**
**PHILLIP MICHAEL VALCIN JR,**
**BRANDON JEROME SNIDER, and**
**PATRICK MARQUIS AYTON JR,**

　　　　**Defendants.**

_____/

**UNITED STATES' SENTENCING MEMORANDUM**

**I.　　Introduction**

The United States of America submits this sentencing memorandum as to Defendants Lindsley Chambers Jr. ("Chambers"), Robert McKinley Thomas ("Thomas"), Justin Anthony Seivright ("Seivright"), Tacaveon Travon Carson ("Carson"), Phillip Michael Valcin Jr. ("Valcin"), Brandon Jerome Snider ("Snider"), and Patrick Marquis Ayton Jr. ("Ayton") (collectively, "Defendants"). Defendants are scheduled to be sentenced on June 12, 2026, for their respective convictions by guilty pleas to conspiracy to commit bank fraud and wire fraud (18 U.S.C. § 1349) and aggravated identity theft (18 U.S.C. § 1028A(a)(1)).

For the reasons addressed herein, the United States respectfully recommends that the Court impose total sentences of imprisonment as follows: 72 months as to Chambers; 72 months as to Thomas; 87 months as to Seivright; 87 months as to Carson; 87 months as to Valcin; 87 months as to Snider; and 101 months as to Ayton. The United States further recommends that the Court

impose a 3-year term of supervised release as to each Defendant, and order restitution jointly and severally among the Defendants in the amount of $1,670,954, consistent with the plea agreements and Presentence Investigation Reports (PSRs).   The government is not seeking forfeiture.

The total sentences recommended by the United States are sufficient, but not greater than necessary, to achieve the goals of sentencing set forth in 18 U.S.C. § 3553(a).

## II.   Summary of the Offense

The facts of this case are not disputed.[1]   For about 20 months during the COVID-19 pandemic, Defendants conspired to defraud $2 million from California's unemployment insurance ("UI") program.   Defendants carried out this crime by using unlawfully obtained personally identifiable information ("PII") of 149 identity-theft victims to submit fraudulent UI claims to the California Employment Development Department (CA-EDD).   To pass an identity check required during the application process, Defendants, directly or through their co-conspirators, uploaded headshot photographs of Chambers and Thomas along with images of counterfeit driver licenses bearing their photos and PII of the victim-applicant.   After CA-EDD approved these fraudulent UI claims and disbursed the funds into debit accounts at Bank of America, Defendants possessed and used debit cards for those accounts (issued in the names of the identity theft victims) to withdraw the funds in cash at ATMs and make purchases.   In total, Defendants and their co-conspirators caused CA-EDD to disburse $2,095,831 based on fraudulent UI claims.   Of this amount, Defendants successfully withdrew and otherwise received $1,670,954 of fraud proceeds.

---

[1] The government incorporates by reference all facts in the Offense Conduct and Role Assessment sections of the respective PSR of each Defendant (DEs 206 (Chambers), 208 (Thomas), 211 (Seivright), 200 (Carson), 209 (Valcin), 201 (Snider), and 202 (Ayton)).   The government also incorporates by reference the Factual Proffer of each Defendant (DEs 150, 153, 156, 160, 163, 168 and 189).   No Defendant has objected to the facts of the offense conduct in their respective PSR.

### III.    Procedural History

In November 2025, a grand jury in the Fort Lauderdale Division of this Court returned the 43-count Indictment (DE 3), which charged each Defendant with one count of conspiracy to commit bank fraud and wire fraud (18 U.S.C. § 1349), three counts of bank fraud (18 U.S.C. § 1344), and three counts of aggravated identity theft (18 U.S.C. § 1028A(a)(1)).   In March 2026, each Defendant pleaded guilty to the conspiracy count and one count of aggravated identity theft. Probation timely disclosed the draft PSRs in May.   To date, only Valcin has filed written objections (DE 215).[2]   Sentencing is set for June 12.

### IV.    Sentencing Guidelines Computation

The PSRs calculate the Guidelines as to Count 1 (conspiracy to commit bank fraud and wire fraud) for each Defendant as follows:

| Guidelines Provision | Chambers | Thomas | Seivright | Carson | Valcin | Snider | Ayton |
|---|---|---|---|---|---|---|---|
| Base Offense Level, § 2B1.1(a)(1) | 7 | 7 | 7 | 7 | 7 | 7 | 7 |
| Loss amount, § 2B1.1(b)(1)(I) (greater than $1.5 million, not more than $3.5 million) | 16 | 16 | 16 | 16 | 16 | 16 | 16 |
| Ten or more victims, § 2B1.1(b)(2)(A) | 2 | 2 | 2 | 2 | 2 | 2 | 2 |
| Production or trafficking of any unauthorized access device or counterfeit access device, § 2B1.1(b)(11)(B) | 2 | 2 | 2 | 2 | 2 | 2 | 2 |
| Acceptance of Responsibility, § 3E1.1(a) and (b) | (3) | (3) | (3) | (3) | (3) | (3) | (3) |

---

[2] The government will respond to Valcin's objections to his PSR in a separate filing.

| Guidelines Provision | Chambers | Thomas | Seivright | Carson | Valcin | Snider | Ayton |
|---|---|---|---|---|---|---|---|
| **Total Offense Level** | 24 | 24 | 24 | 24 | 24 | 24 | 24 |
| Criminal History Points | 6 | 4 | 6 | 4 | 6 | 3 | 7 |
| **Criminal History Category** | **III** | **III** | **III** | **III** | **III** | **II** | **IV** |
| **Imprisonment Range (Months)** | **63-78** | **63-78** | **63-78** | **63-78** | **63-78** | **57-71** | **77-96** |

Additionally, the Guidelines range for each Defendant's conviction of aggravated identity theft (18 U.S.C. § 1028A(a)(1)) is the mandatory 24-month term of imprisonment provided by that statute, which the Court must impose consecutively. *See* §§ 2B1.6(a) and 5G1.2(a).

The government submits that the PSRs correctly calculate the Guidelines for each Defendant and asks the Court to adopt these computations at sentencing.

## V.     Sentencing Factors Under 18 U.S.C. § 3553(a)

Title 18, United States Code, Section 3553(a), enumerates several factors that the Court must consider in sentencing a defendant.   As addressed below, the § 3553(a) factors relevant to each Defendant support the individual sentences recommended by the United States as sufficient, but not greater than necessary, to achieve the goals of sentencing.

### a.     Nature and Circumstances of the Offense.

This was a large-scale fraud scheme carried out for nearly two years.  It involved the submission of hundreds of fraudulent UI claims, all using stolen PII of 149 identity-theft victims. Each UI claim had to pass an identity check, which required comparing a government-issued identification document (e.g., driver's license) with a real-time headshot photograph of the person depicted on the document.   This means that during the application process, Defendants, directly or through their co-conspirators, created and uploaded a counterfeit driver's license for each of the

149 victims of identity theft whose PII was used to submit fraudulent UI claims and took a real-time headshot photograph of the Defendant whose picture appeared on the counterfeit license. For most of the fraudulent UI claims, a headshot of Chambers was used for the counterfeit license and the real-time photo comparisons.   Indeed, the third-party identity verification service (ID.me) used by CA-EDD to verify these claims received more than 1,900 images of counterfeit driver's licenses bearing Chambers' face and standalone headshots of him.   ID.me also received images of counterfeit driver's licenses bearing Thomas' face and standalone headshots of him.

Below is one example of a counterfeit license with Chambers' face, with the victim's name and PII redacted, along with the corresponding real-time headshot of Chambers.

 

The fraudulent UI applications submitted by Defendants, directly or through their co-conspirators, caused CA-EDD to pay over $2 million in UI benefits that should have gone to California residents whose employment was directly and adversely affected by the COVID-19 pandemic.   However, due to the fraud, CA-EDD disbursed the funds to accounts at Bank of America opened for unknowing victims of identity theft, and Defendants drained over $1.6 million from these accounts using debit cards to make ATM cash withdrawals, transfers, and purchases. Most of the cash withdrawal amounts at ATMs were $1,000 each time, meaning well over 1,000 ATM withdrawals occurred during the conspiracy.

b.      **History and Characteristics of the Defendants.**

i.          **Chambers**

Chambers is a 61-year-old U.S. citizen and Florida resident.   His criminal history begins at age 19 and includes felony convictions for drug trafficking, theft, and battery, among other offenses (PSR ¶¶ 79-89).   He served multiple terms of imprisonment, many of which are outside the period counted for criminal history scoring.   In 2005 (at age 40), Chambers was sentenced to 17 years in Florida state prison for drug trafficking (PSR ¶ 89).   He completed that term of imprisonment in 2019 and commenced the instant offense in 2020.   The PSR assigns six criminal history points, placing him in Criminal History Category III.

During the investigation of this case, Chambers participated in a consensual interview with law enforcement.   He admitted withdrawing funds from ATMs using debit cards that were not his and stated that he turned over most of the cash to co-conspirators who provided him with the cards. For each $1,000 withdrawal, Chambers said he kept approximately $50 to $100.   He also acknowledged that co-conspirators photographed him.   Chambers was cooperative but unable to identify the individuals who supplied the cards or took his picture, describing them only as "guys on the street" who offered him money to buy drugs in exchange for being photographed and making ATM withdrawals.

While on bond in this case, Chambers tested positive for cocaine on four occasions.   At other times, he failed to report for drug testing.   In March 2026, Probation filed a petition to revoke his bond, and he was arrested in the Middle District of Florida (where he resided) pursuant to this Court's no-bond warrant.   At his initial appearance in this District for the bond violations, Chambers waived a probable cause hearing and has remained in custody pending sentencing.

6

ii.     **Thomas**

Thomas is a 73-year-old U.S. citizen and Florida resident. His criminal history begins at age 21 and includes felony convictions for drug trafficking, grand theft, burglary, possession of a stolen credit card, and forgery, among other offenses (PSR ¶¶ 80-100). He served multiple terms of imprisonment for these convictions and related probation violations, many of which fall outside the period counted for criminal history scoring. The PSR assigns four criminal history points, placing him in Criminal History Category III (PSR ¶ 101). He also has a pending charge for possession of cocaine (PSR ¶ 105).

During the investigation of this case, Thomas also participated in a consensual interview with law enforcement. He too admitted withdrawing funds from ATMs using debit cards that were not his, and that he gave most of the cash to the co-conspirators who had supplied him with the debit cards. For each $1,000 withdrawal, Thomas kept approximately $50 to $100. Thomas was cooperative but did not know the names of the individuals who gave him the cards. After the case was indicted, Thomas advised the government through his attorney that he recognized co-defendant Snider as one of the individuals who had given Thomas debit cards to withdraw funds at ATMs.

On March 11, 2026, Probation filed a petition alleging that Thomas violated his conditions of bond in the instant case by failing to abstain from alcohol, failing to comply with the conditions of location monitoring, failing to attend his scheduled treatment appointment, and testing positive for cocaine. At a show-cause hearing before U.S. Magistrate Judge Lauren Louis, Thomas admitted the violations and the Court revoked his bond effective March 23, 2026. He remains in custody awaiting sentencing.

### iii.      **Seivright**

Seivright is a 31-year-old U.S. citizen and Florida resident.   His criminal history begins at age 19 and reflects a persistent and overlapping pattern of fraud and identity-theft-related conduct. In four separate Florida cases charged between 2015 and 2021, he was convicted of grand theft, fraudulent use of credit cards, criminal use of personal identifying information, trafficking in stolen identities, possession of stolen or fictitious driver's licenses, fraudulent use of identification, and organized fraud, among other offenses (PSR ¶¶ 78-81).   Notably, Seivright committed many of these offenses while serving probationary sentences imposed for fraud convictions.   For example, he committed the offenses in the present federal case while on probation for organized fraud (PSR ¶ 81), and he committed that offense while on probation for possession of a stolen/fictitious driver's license and fraudulent use/possession of personal identification (PSR ¶ 80).   He was also previously charged with co-defendant Valcin for fraud offenses (PSR ¶ 79).

The PSR assigns Seivright six criminal history points, placing him in Criminal History Category III.   Additionally, Seivright's record includes resisting arrest (PSR ¶¶ 79–80), careless driving (PSR ¶ 81), and excessive speeding over 100 miles per hour (PSR ¶ 83).   According to the PSR, Seivright has not been employed since 2015 and supports himself financially from "hustling, gambling," using funds from his prior financial crimes (PSR ¶ 116).   Seivright did not provide any cooperation in this case.

### iv.      **Carson**

Carson is a 33-year-old U.S. citizen and Florida resident.   His criminal history begins at age 18 and includes convictions in two separate Florida cases from 2015 for fraud offenses similar to those in this case.   Those prior convictions include theft involving the use of fraudulent credit

cards, possession of stolen credit or debit cards, possession of counterfeit instruments, unlawful possession of personal identifying information of five or more individuals, and trafficking in counterfeit credit cards (PSR ¶¶ 80, 81).  His record further reflects probation violations and several traffic and motor vehicle licensing offenses.

The PSR assigns Carson four criminal history points, placing him in Criminal History Category III (PSR ¶84).  According to the PSR, Carson has been unemployed for the past ten years.  He has not provided any cooperation in this case.

v.  **Valcin**

Valcin is a 31-year-old U.S. citizen and Florida resident.  His criminal history begins at age 19 and reflects several fraud-related and theft offenses.  His convictions include burglary and grand theft in a 2014 Florida case (PSR ¶ 83); fraud/impersonation and providing false identification to law enforcement in a separate 2014 Florida case (PSR ¶ 84); and fraud impersonation and grand theft involving credit card fraud in a 2017 Florida case (PSR ¶ 85). Notably, Valcin was serving a term of probation imposed in the 2017 fraud case when he committed the instant federal offenses (PSR ¶ 88).

The PSR assigns Valcin six criminal history points, placing him in Criminal History Category III (PSR ¶ 89).  Valcin's other criminal conduct includes a 2016 arrest in Missouri for fraudulent use of a credit or debit card and receiving stolen property (PSR¶ 98).  However, the circumstances of that arrest and the disposition of the case could not be obtained during the presentence investigation.  In 2021, Valcin was charged in Florida with possession of a firearm and ammunition by a convicted felon and carrying a concealed weapon; those charges were nolle

9

prossed (PSR ¶ 94).   He also has a history of probation violations and revocations (PSR ¶¶ 82, 84, 85).   Valcin did not provide any cooperation in this case.

      vi.      **Snider**

Snider is a 40-year-old U.S. citizen and Florida resident.   His most recent criminal history includes a Georgia conviction for identity fraud, for which he received a suspended 180-day jail sentence followed by eight years of probation (PSR ¶ 89).   Notably, Snider currently has three pending state cases in Broward County involving fraud-related offenses akin to the instant federal conduct (PSR ¶¶ 94–96).   Those charges include criminal use of personal identification, grand theft, money laundering, and defrauding a financial institution.

In the first pending case, Snider allegedly ported a victim's home telephone number, used that number along with the victim's personal identifying information to access the victim's bank account, and transferred $23,765 to himself (PSR ¶ 94).   In the second pending case, Snider allegedly created a fraudulent Chase credit card account and made more than $17,000 in fraudulent charges (PSR ¶ 95).   In the third pending case, Snider allegedly opened a Bilt Mastercard in the victim's name and engaged in several fraudulent transactions, including writing two checks to himself totaling $12,500, attempting to wire $35,500 to himself, and making additional fraudulent purchases such as $8,000 for a luxury vehicle and yacht rental service and $7,600 for a men's gold diamond Rolex watch (PSR ¶ 96).

Snider's criminal history from age 16 to 27 reflects multiple convictions for drug possession and motor vehicle offenses, along with associated violations and revocations (PSR ¶¶ 77–88).   The PSR assigns Snider three criminal history points, placing him in Criminal History Category II (PSR ¶ 90).   Snider did not provide any cooperation in this case.

vii.       **Ayton**

Ayton is a 32-year-old U.S. citizen and Florida resident.   His criminal history begins at age 22 and reflects a continuing pattern of fraud, identity theft, and related offenses.   In a 2023 Florida case, he was convicted of burglary, grand theft, criminal use of personal identification information, and fraudulent use of credit cards, among other offenses (PSR ¶ 81).   He was sentenced to 12 months in jail followed by 48 months of probation, the latter of which he is currently serving.   In a 2024 Florida case, Ayton was convicted of burglary, fraudulent use of PII, unlawful possession of a stolen credit card, and fraudulent use of a stolen credit card, resulting in a two-year term of probation (PSR ¶ 82).   In a separate 2024 Florida case, he was convicted of fraudulent use of a credit card and was sentenced to time served after spending six months in jail (PSR ¶ 83).   His other criminal conduct includes theft, possession of a counterfeit driver's license, disorderly conduct, public nuisance, drug possession, and motor vehicle offenses.

The PSR assigns Ayton seven criminal history points, placing him in Criminal History Category IV (PSR ¶ 84).   Ayton did not provide any cooperation in this case.

c.        **Need for the Sentence to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment, and Afford Adequate Deterrence to Criminal Conduct.**

The government's individual sentencing recommendations reflect the seriousness of the offense conduct, promote respect for the law, provide just punishment, and afford adequate deterrence to criminal activity. Each Defendant willingly participated in a coordinated fraud scheme that exploited victims' PII, caused significant financial harm to the State of California, and required substantial investigative resources to uncover.   The Defendants' respective criminal histories—many involving prior fraud, identity theft, and other crimes of dishonesty, as well as

11

repeated violations of probation or supervision—demonstrate that prior penalties have failed to deter them from engaging in new criminal activity.   Several Defendants committed the instant offenses while on probation or immediately after completing terms of incarceration, underscoring a persistent disregard for the law and conditions set by courts.   Meaningful custodial sentences are therefore necessary not only to impose just punishment for the serious and repeated nature of the offenses, but also to deter these Defendants specifically, and others generally, from engaging in similar identity theft and unemployment benefit fraud schemes that are far too prevalent in this District and elsewhere.

> **d.      Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct.**

The sentences recommended by the government avoid unwarranted sentencing disparities among these Defendants and others with similar records who have been found guilty of similar conduct.   Defendants share the same total offense level of 24 and largely had the same roles in the offense.   The differences in their advisory Guideline ranges arise solely from their individual criminal history categories, which reflect their varying degrees of recidivism, prior supervision failures, and seriousness of past criminal conduct.   Chambers, Thomas, Seivright, Carson, and Valcin—each in Criminal History Category III—carry guideline ranges of 63 to 78 months; Snider, in Category II, carries a range of 57 to 71 months; and Ayton, whose extensive history places him in Category IV, carries a range of 77 to 96 months.   Additionally, all Defendants face a mandatory 2-year consecutive sentence for their respective aggravated identity theft convictions. The total sentences recommended by the government are proportionate, consistent, and firmly grounded in the structure of the Guidelines. This approach avoids unwarranted disparities while

properly accounting for each Defendant's individual culpability, criminal history, cooperation in this case (as to Chambers and Thomas), and risk of recidivism.

## VI.      <u>Individual Recommendations and Conclusion</u>

As to **Chambers**, the government recommends a total sentence of **72 months' imprisonment**, which consists of **48 months as to Count 1** and **24 months as to Count 42**, imposed consecutively as required for these offenses.  This recommendation, while substantial, represents a modest downward variance on Count 1 based on Chambers's cooperative posture during the investigation, including his admissions regarding the ATM withdrawals, his acknowledgment of being photographed by co-conspirators, and his efforts to explain his role. Nevertheless, the seriousness of the offense, Chambers's decades-long criminal history— including a 17-year sentence for drug trafficking—and his commission of the instant offense shortly after release from prison support a substantial custodial sentence.  His repeated drug use and noncompliance while on bond further demonstrate an ongoing inability to conform to lawful behavior.

As to **Thomas**, the government recommends a total sentence of **72 months' imprisonment**, consisting of **48 months** as to Count 1 and **24 months** as to Count 24, imposed consecutively as required for these offenses.  This recommendation, while substantial, includes the same modest variance on Count 1 recommended for Chambers based on Thomas's cooperative posture during the investigation, including his admissions regarding the fraudulent ATM withdrawals and his later identification of co-defendant Snider as one of the individuals who supplied him with debit cards.  However, Thomas' lengthy criminal history—spanning decades and including convictions for drug trafficking, grand theft, burglary, and other crimes—together

with his repeated probation violations and recent bond violations, create the need for a significant custodial sentence. His participation in the instant offense, which included 116 separate ATM withdrawals, despite prior supervision and incarceration, demonstrates an ongoing risk of recidivism and disregard for court-ordered conditions.

As to **Seivright**, the government recommends a total sentence of **87 months'** imprisonment, which consists of **63 months** as to Count 1 and **24 months** as to Count 40, imposed consecutively as required for these offenses. This recommendation, which is at the bottom of the Guidelines as to Count 1, is firmly supported by the Seivright's extensive and persistent pattern of fraud-related offenses. For several years, across multiple Florida cases, Seivright engaged in grand theft, fraudulent use of credit cards, criminal use of personal identification, trafficking in stolen identities, and organized fraud—often committing new offenses while on probation for earlier ones. He committed the instant federal offense while under supervision for organized fraud, demonstrating an ongoing unwillingness to comply with court-ordered conditions and a high likelihood of recidivism. His lack of employment since 2015 and admitted reliance on "hustling" and proceeds from prior crimes further underscore his continued risk to the public. A sentence of 87 months appropriately reflects the seriousness of his conduct, promotes respect for the law, provides just punishment, and addresses the need to deter Seivright for future criminal conduct.

As to **Carson**, the government recommends a total sentence of **87 months' imprisonment**, which consists of **63 months** as to Count 1 and **24 months** as to Count 31, imposed consecutively as required for these offenses. This recommendation, which is at the bottom of the Guidelines, is warranted based on Carson's history of similar fraud-related conduct, including theft involving fraudulent credit cards, possession of stolen and counterfeit instruments, unlawful possession of

14

personal identifying information, and trafficking in counterfeit credit cards.  Additionally, his history of probation violations and multiple traffic and licensing offenses indicates an ongoing struggle to follow the law.  Despite these prior encounters, Carson again participated in a large-scale, organized identity-theft and fraud scheme, demonstrating that prior penalties have not deterred him.

As to **Valcin**, the government recommends a total sentence of **87 months' imprisonment**, which consists of **63 months** as to Count 1 and **24 months** as to Count 30, imposed consecutively as required for these offenses. This recommendation, which is at the bottom of the Guidelines, reflects the seriousness of his conduct, his repeated fraud-related criminal activity, and his commission of the instant offense while serving a term of probation for a prior fraud conviction. His history of fraud and theft offenses, his additional criminal conduct in Missouri and Florida, and his repeated probation violations establish a clear risk of recidivism and a consistent disregard for the law.

As to **Snider**, the government recommends a total sentence of **87 months' imprisonment**, which consists of **63 months** as to Count 1 and **24 months** as to Count 23, imposed consecutively as required for these offenses. Although Snider falls within Criminal History Category II, the recommended sentence is within the Guidelines range and appropriately reflects both the seriousness of the instant scheme and the breadth of his additional pending fraud-related conduct in Broward County.   Snider's recent conviction for identity fraud, the three active state fraud cases involving victim losses and sophisticated identity-theft techniques, and his earlier pattern of drug and motor-vehicle offenses together establish a sustained disregard for the law and a significant likelihood of recidivism.   A sentence of 87 months appropriately accounts for the need for

deterrence, just punishment, and protection of the public, while ensuring proportionality relative to his co-defendants.

As to **Ayton**, the government recommends a total sentence of **101 months'** imprisonment, which consists of **77 months** as to Count 1 and **24 months** as to Count 36, imposed consecutively as required for these offenses.   This recommendation, while significant, is at the bottom of Ayton's advisory Guidelines range as to Count 1 and is warranted given his extensive and escalating pattern of fraud, identity theft, and related criminal conduct spanning multiple cases between 2023 and 2024.   Ayton committed the instant federal offense while actively serving multiple terms of probation for similar fraud offenses, demonstrating that prior sanctions— including imprisonment and supervision—have not deterred him.   His criminal history category of IV, driven by numerous fraud convictions and additional criminal conduct, underscores his significant risk of recidivism.   A sentence of 101 months is necessary to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and deter Ayton and others from future identity-theft offenses.

\* \* \*

In sum, the government's recommended sentences balance the advisory Guidelines, the nature and circumstances of the offense, the Defendants' histories and characteristics, and the other 3553(a) factors.   Each recommendation reflects the Defendants' respective roles in a substantial and sustained fraud scheme, their demonstrated patterns of recidivism, and their varying levels of criminal history, while also ensuring proportionality.   Based upon these factors, the recommended sentences are sufficient, but not greater than necessary, to achieve the goals of sentencing.

16

Accordingly, the United States respectfully requests that the Court impose the sentences set forth above.

Respectfully submitted,

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

By:  */s/ David A. Snider*
David A. Snider
Assistant United States Attorney
Court ID No. A5502260
99 N.E. 4th Street
Miami, FL 33132
Tel: (305) 961-9446
Email: david.snider@usdoj.gov

17